IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-328-BO

| | |
|---|---|
| JEFFERY T. ROYAL,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | **O R D E R** |

This matter is before the Court on the parties' cross-motions for judgment on the pleadings. [D.E. 19, 21]. A hearing on this matter was held in Edenton, North Carolina on August 31, 2017. [D.E. 26]. For the reasons discussed below, this matter is REMANDED for further consideration by the Commissioner.

## BACKGROUND

On November 28, 2012, plaintiff filed applications for disability insurance benefits under Title II of the Social Security Act ("Act") and supplemental security income benefits under Title XVI of the Act. [Tr. 27]. Plaintiff alleged a disability onset date of April 12, 2008, due to high cholesterol, high blood pressure, sleep issues, and a heart attack. [Tr. 229–37, 271]. Plaintiff's applications were denied initially and upon reconsideration. [Tr. 86–87, 116–17]. On February 19, 2015, plaintiff amended his alleged disability onset date to November 20, 2012. [Tr. 259].

On February 26, 2015, an Administrative Law Judge ("ALJ") held a video hearing to consider plaintiff's claims *de novo*. [Tr. 43–59]. On April 21, 2015, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act. [Tr. 27-37]. On July 28,

2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. [Tr. 1–4]. On September 21, 2016, plaintiff filed a complaint seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). [D.E. 6].

## LEGAL STANDARD

A district court's review of the Commissioner's final decision is limited to determining whether the correct legal standard was applied and whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation and citation omitted).

Under the Social Security Act ("Act"), an individual is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(A). Further:

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other line of substantial gainful work . . . .

42 U.S.C. § 1382c(a)(3)(B).

The ALJ engages in a sequential five-step evaluation process to make an initial disability determination. 20 C.F.R. § 404.1520(a); *see Johnson*, 434 F.3d at 653. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth

2

step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If a decision regarding the claimant's disability can be made at any step of the process, the ALJ's inquiry ceases. 20 C.F.R. § 404.1520(a)(4).

When evaluating adults, the ALJ denies the claim at step one if the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4). At step two, the ALJ denies the claim if the claimant does not have a severe impairment or combination of impairments significantly limiting him from performing basic work activities. *Id.* At step three, the ALJ compares the claimant's impairment to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed, or equivalent to a listed impairment, disability is conclusively presumed without considering the claimant's age, education, and work experience. 20 C.F.R. § 416.920(d). However, if the impairment does not meet or equal a listed impairment, the ALJ then makes a residual functional capacity ("RFC") finding. 20 C.F.R. § 404.1545(e).

In making an RFC finding, the ALJ's considers both severe and non-severe impairments, and any combination thereof, and takes into account both objective medical evidence as well as subjective complaints of pain and limitations. 20 C.F.R. § 404.1545(e). The ALJ further considers the claimant's ability to meet the physical, mental, sensory, and other requirements of accomplishing work. 20 C.F.R. § 404.1545(a)(4). An RFC finding is meant to reflect the most that a claimant can do, despite his limitations. 20 C.F.R. § 404.1545(a)(1). Moreover, an RFC finding should reflect the claimant's ability to perform sustained work-related activities in a work setting on regular and continuing basis, meaning eight-hours per day, five days per week. *See* SSR 96-8p; *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006).

At step four, the ALJ considers a claimant's RFC to determine whether he can perform past relevant work ("PRW") despite his impairments. 20 C.F.R. § 416.920(a)(4). If not, the ALJ proceeds to step five of the analysis: establishing whether the claimant–based on his RFC, age, education, and work experience–can make an adjustment to perform other work. *Id.* If the claimant cannot perform other work, the ALJ finds him disabled. 20 C.F.R. § 416.920(a)(4).

## DISCUSSION

Applying the sequential five-step evaluation process, the ALJ found that steps one through four favored plaintiff. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 20, 2012, the amended alleged disability onset date. [Tr. 29]. At step two, the ALJ enumerated plaintiff's severe impairments, including: coronary artery disease ("CAD") and sleep apnea. *Id.* The ALJ also noted that there was no objective evidence to support plaintiff's complaint of disabling back pain. [Tr. 30]. Further, the ALJ found that plaintiff's alleged mental impairments–anxiety and substance abuse disorder–did not cause more than minimal limitation of his ability to perform basic work activities. *Id.* At step three, the ALJ found that none of plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 31].

The ALJ found that plaintiff had the RFC to perform less than a full range of light work with the following restrictions: "claimant could have no exposure to temperature extremes, high humidity, concentrated pulmonary irritants, or workplace hazards." [Tr. 32]. On the basis this RFC, the vocational expert ("VE") testified at the February 26, 2015, hearing that, plaintiff could not perform his former past relevant work ("PRW") as a dump truck driver, mechanic, or mechanic supervisor. [Tr. 57]. The VE also found that plaintiff could still perform jobs,

4

including: car wash attendant (DOT # 915.667-010) with 3,100 positions in North Carolina and 111,000 positions nationally; (2) shipping and receiving weigher (DOT # 222.387-074) with 2,500 positions in North Carolina and 76,000 positions nationally; and (3) parking lot attendant (DOT # 915.473-010) with 34,000 positions in North Carolina and 1,135,000 positions nationally. [Tr. 58]. Notably, however, the VE also stated that no jobs would be available to plaintiff at the sedentary level. *Id.*

At step four, the ALJ adopted the VE's finding that plaintiff was unable to resume his PRW. [Tr. 36]. At step five–in reliance upon the VE's testimony regarding alternative jobs that plaintiff could perform, and after considering plaintiff's age, education, work experience, and RFC–the ALJ determined that plaintiff was not disabled. [Tr. 37].

Plaintiff argues that the ALJ erred in this matter when he assigned little weight to an opinion provided by plaintiff's primary care provider, Karina Stowell, a physician's assistant ("PA"), and signed by her supervising physician, Dr. Linda Greenspan. *See* [D.E. 20] at 14–17. Plaintiff also argues that the ALJ erred when he did not adopt the full opinion of the plaintiff's treating cardiologist, Dr. Christopher Barber, *see id.* at 11–14.

The record reflects that plaintiff was patient of at Black River Health Services (BRHS) for several years. *See, e.g.*, [Tr. 683–704, 711–724, 798–808, 830–836] (BRHS treatment records for plaintiff from 2011 to 2015). At BRHS, Plaintiff received primary care from two nurse practitioners ("NPs") and a PA, all of whom worked under the supervision of Dr. Greenspan. *See, e.g.*, [Tr. 686] (May 16, 2011, new patient treatment record completed by Michelle Richardson, FNP-C); [Tr. 801] (December 19, 2013, treatment record completed by Rebecca W. Denson, FNP); [Tr. 830] (January 22, 2015, treatment record completed by Karina J. Stowell, PA-C).

In January 2015, both Dr. Greenspan and PA Stowell signed a Medical Limitations Update ("Update"). See [Tr. 816–18]. The Update noted that, since 2011, Dr. Greenspan's medical practice had treated plaintiff for CAD, myocardial infarction, hypertension, shortness of breath, insomnia, and chest pain. [Tr. 817]. Utilizing a check-box format, the Update listed, among other things, the following findings: plaintiff could not walk one city block or more without rest or severe pain; plaintiff's medical history precluded him from stooping, crouching, or bending; plaintiff must lie down or recline for 5 hours or more during an 8-hour work day; plaintiff would require unscheduled work breaks in an 8-hour workday; plaintiff's pain and fatigue would frequently interfere with his attention and concentration need to accomplish simple work tasks; plaintiff's depression and anxiety affect his physical condition or otherwise contribute to the severity of his symptoms and functional limitations; plaintiff's chronic insomnia, chest pain, knee pain, and memory issues would further limit his ability to work; plaintiff may only rarely lift or carry five pounds and may never lift or carry more than that amount. [Tr. 817–18]. The medical provider opinion section of the Update noted that plaintiff was unable to work in a competitive work environment for 8-hour days, five days a week. [Tr. 818]. The Update also indicated that the medical provider based the opinion on the following items: (1) history and medical file; (2) progress and office notes; (3) physical examinations; and (4) consultative medical opinions. *Id.*

Here, the ALJ considered the medical restrictions addressed in the Update [Tr. 34], and noted that "the Update suggests that the claimant is capable of less than sedentary exertional work activity." [Tr. 35]. However, the ALJ ultimately gave the Update little weight because the ALJ (1) "determined that there is no indication that Dr. Greenspan ever actually examined the claimant," and (2) surmised "that [plaintiff's] examination/treatment was actually performed by

6

physicians' assistants or nurse practitioners." *See* [Tr. 35]. This aspect of the ALJ's decision is not in accordance with the court's prior rulings.

In *Argeris v. Colvin* the court acknowledged that a physician's assistant was not an acceptable medical source under the then-current regulations, 195 F. Supp. 3d 812, 815 (E.D.N.C. 2016) (citing 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1513). However, the court nevertheless found that the ALJ had erred in discounting the weight of a treating PA's opinion. *Id.* The court reiterated its previous holding that "where a physician's assistant has treated a patient under the supervision of physicians and renders an opinion based on the course and scope of such supervised treatment, the physician's assistant's opinion deserves the same weight as that of a treating physician." *Id.* (citation and internal quotation marks omitted). Further, the court noted that "'if the facts of treatment show the primary caregiver is a non-acceptable medical source, such as a nurse practitioner, and a doctor adopts the findings and information about the patient and is engaged in the treatment, the nurse practitioner's evaluation *becomes* the report of the doctor.'" *Id.* (quoting *Palmer v. Colvin*, No. 5:13-CV-126-BO, 2014 WL 1056767, at *2 (E.D.N.C. Mar. 18, 2014)).

Here, as discussed above, Dr. Greenspan signed the Update. *See* [Tr. 818]. Additionally, Dr. Greenspan wrote a July 2015 letter affirming: (1) her general supervision of the "mid-level providers" in her practice, to include PA Stowell; (2) her review of plaintiff's case; and (3) her support for PA Stowell's evaluation. *See* [Tr. 861]. These occurrences indicate that Dr. Greenspan "adopted" PA Stowell's Update findings as her own. *See Argeris*, 195 F. Supp. 3d at 815. Thus, as in *Argeris*, the ALJ in this matter erred in discounting the weight of the Update merely because the ALJ surmised that the Update form was completed by the PA, rather than by the physician.

7

As the ALJ acknowledged, the Update, on its face, suggests that plaintiff is not capable of even sedentary work. [Tr. 35]. Because the ALJ improperly discounted the Update, the court is precluded from deciding whether the ALJ's RFC determination is supported by substantial evidence. *See DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator."). Accordingly, the court will exercise its discretion and remand to the Commissioner for further consideration of the Update and additional fact-finding, as necessary, to resolve the matter. *See Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) (noting that remand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review."); *Edwards v. Bowen*, 672 F.Supp. 230, 236 (E.D.N.C. 1987) ("The decision of whether to reverse and remand for calculation of benefits, or reverse and remand for a new hearing, is one which lies within the sound discretion of the court.").

In light of the need to remand the case, the court need not address plaintiff's additional contentions of error. *See, e.g., Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

The court also notes that the ALJ found that plaintiff was born on September 24, 1960, and that plaintiff was 47 years old on his alleged disability onset date. [Tr. 36]. This finding conflicts with the ALJ's own notation that the plaintiff had amended the alleged disability onset date to November 20, 2012. [Tr. 27, 29]; *see also* [Tr. 259] (letter from the plaintiff's attorney seeking to amend the alleged disability onset date). On the amended alleged onset date, plaintiff was 52 years old, not 47. Upon remand, the Commissioner shall properly apply plaintiff's amended alleged disability onset date.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings [D.E. 19] is GRANTED, the Commissioner's motion on the pleadings [D.E. 21] is DENIED, and the matter is REMANDED to the Commissioner for further proceedings consistent with this decision.

SO ORDERED.

This 22 day of September, 2017.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE